[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Robert Horowitz (plaintiff or Horowitz) appeals the decision of the Zoning Board of Appeals of the City of Stamford (Board) sustaining the decision of the Zoning Enforcement Officer, Leonard DiPrete (DiPrete or ZEO) that a structure separate from the main dwelling on the plaintiff's property cannot be used as a dwelling unit.
The subject property is located at 110 Erskine Road, Stamford, Connecticut, as shown on Map #2632, entitled "Map of Property to be conveyed by Ruth C. Bingham to Richard G. Belcher, Stamford, Conn.," which is on file at the Office a the Town Clerk, City of Stamford. (Return of Record [RR] #7 Application #127-89 for Robert Horowitz dated January 10, 1989). The property lies within an RA-2 Zone. (RR#2). An RA-2 zone is a single family, low density district "which [has] been or may be developed predominantly for single family dwellings on large lots in a rural setting." (RR #29 Zoning Regulations, City of Stamford, Article III Section 4AA1.2a).
On July 5, 1989, the ZED issued a cease and desist order stating that the "accessory" structure on plaintiff's property was being used as a dwelling unit in violation of Section 4AA-1 of the Zoning Regulations. Plaintiff then filed an appeal to the Board on August 3, 1989. However, the hearing before the Board was delayed and the same cease and desist order was later issued on December 13, 1989. (RR #23 at 12; #2 attachment).
Thereafter, on January 10, 1990, Application No., 127-89 was filed with the Board by Robert Horowitz to appeal the December 13, 1989 cease and desist order. (RR #2) Specifically the application stated that the appeal was being taken because "the accessory structure being used as a dwelling unit was in existence prior to the enactment of the Stamford Zoning Regulations." (RR #2) The appeal to the Board was timely in that it was taken within thirty days of the date of the cease and desist order. Conn. Gen. Stat. 8-7. CT Page 5110 On February 28, 1990, the Board held a public hearing on the appeal of the cease and desist order. (RR 9, Notice published in the Advocate, February 15, 1990 and February 21, 1990). At the public hearing, testimony was presented in support of and in opposition to the appeal. (RR #23, Transcript of Zoning Board of Appeals Hearing dated February 28, 1990).
At an executive meeting of the Board held on March 21, 1990, the decision of the ZEO was sustained unanimously by the five members of the Board. (RR #24, Transcript of the Zoning Board of Appeals Meeting dated March 21, 1990). Notice of the Board's decision was published in the Advocate on April 4, 1990 (RR #28). It is from this decision that the instant appeal arises.
Horowitz filed a brief in support of his appeal. The Board also filed a brief.
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which created that right. Simko v. Zoning Board of Appeals,206 Conn. 374, 377 (1988). These provisions are mandatory and jurisdictional; failure to comply subjects the appeal to dismissal. Id. This appeal from the Stamford Zoning Board of Appeals decision is taken pursuant to Conn. Gen. Stat.8-8 as amended by Conn. Pub. Acts No. 89-356 #1.
An appeal from the Zoning Board of Appeals must be taken within fifteen days from the date of publication of the notice of decision. Conn. Gen. Stat. 8-8 (b) (rev'd to 1989, as amended). The decision of the Board was published on April 4, 1990. Service was made on April 17, 1990 on Raymond D. Sanborne, Chairman of the Board, Georgia A. Bacon, Clerk of the Board, and Lois PontBriant, Town and City Clerk of the City of Stamford. It is found that the appeal is timely. See Conn. Pub. Act. No. 90-286, 1, 3, 9 (1990).
Aggrievement is a prerequisite to maintaining an appeal pursuant to Conn. Gen. Stat. 8-8. Smith v. PZB, 203 Conn. 317,321 (1987). A plaintiff must plead and prove aggrievement to avoid having the case dismissed. Fuller v. PZC, 21 Conn. App. 340,343 (1990). Conn. Gen. Stat. 8-8 provides that "[a]ny person . . . aggrieved by any decision of said board . . . may . . . take an appeal to the superior court . . . ." Conn. Gen. Stat. 8-8a (rev'd to 1989, as amended). The owner of the property that is the subject of the action is aggrieved and entitled to bring an appeal. Bossert Corp. v. Norwalk, 157 Conn. 279, 285 (1968). At the hearing on CT Page 5111 appeal to the superior court, plaintiff testified that he purchased the subject property in 1985 and has rented the structure in question since then. It is found that the plaintiff is the owner of the subject property, and therefore, that he is aggrieved and authorized to bring this action. DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369,375 (1991).
A trial court is not at liberty to substitute its judgment for that of an administrative tribunal. Frito-Lay, Inc. v. PZC, 206 Conn. 554, 572-73 (1988). "Upon appeal, the trial court reviews the record before the Board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . (citations omitted). The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs (citations omitted)." Adolphson v. Zoning Board of appeals, 205 Conn. 703, 707 (1988). "Courts must not disturb the decision of a zoning [board] unless the party aggrieved by that decision establishes that the [board] acted arbitrarily or illegally." Stankiewicz v. Zoning Board of Appeals, 15 Conn. App. 729, 737 (1988), aff'd, 211 Conn. 76
(1989).
I. Nonconforming Use
Plaintiff argues that the structure in question, now used as a dwelling, is a valid nonconforming use. He further argues that the conduct of the City of Stamford constitutes a waiver of its right to prohibit the use of the "accessory" structure as a dwelling. Specifically, he claims that the City assessed and collected taxes on the dwelling as a residential unit during his ownership, and that the City failed to cite any alleged violation during his predecessor's ownership, or his own ownership, until the cease and desist order of 1989.
Horowitz purchased the property, consisting of a dwelling and the structure in question, on September 11, 1985. (RR #23 at 5) The tenant in occupancy of the structure had been renting since at least 1970. (RR #23 at 25) The seller, George J. Skehan, represented to Horowitz that the usage of the structure as a dwelling was in conformity with the Stamford zoning regulations. (Plaintiff's Brief at 5-6)
In attempting to trace the history of the structure the plaintiff's attorney contacted Skehan (RR #23 at 9), who sent a letter, addressed to the Board, to the attorney on October 31, 1989. Plaintiff's attorney introduced this letter as Exhibit D at the February 28, 1990 public hearing. The letter informed the Board that: CT Page 5112
 1) His father purchased the property in 1940.
2) The structure was built about 1950.
 3) Skehan built his residence on the property in 1968.
 4) At the time of sale to Horowitz in 1985 the structure was occupied by a tenant.
(RR #15, Letter from Gerald Skehan to the Zoning Board of Appeals.)
Horowitz argues that the structure was in use as a dwelling since its construction around 1950, which is prior to the adoption of the City of Stamford Zoning Regulations on November 30, 1951. Therefore, Horowitz argues that his structure is a nonconforming use.
 A property owner may legally engage in a prohibited use under either of two dispensations. He may obtain a variance, or his use may qualify as a nonconformity. T. Tondro, [Connecticut Land Use Regulation (1979)] III-E(4), p. 70. A nonconformity is a use or structure prohibited by the zoning regulations but is permitted because of its existence at the time that the regulations are adopted. Id.
Adolphson, 205 Conn. at 710. See also City of Stamford Zoning Regulations, Article II, #68. To be considered a nonconforming use, the use must be: 1) Lawful; 2) in existence at the time the zoning regulations making the use nonconforming were enacted. Cummings v. Tripp, 204 Conn. 67, 91-92 (1987). In order to qualify as an existing use, the premises must be used in such a manner so as to be known in the neighborhood as used for a given purpose. Helicopter Associates, Inc. v. Stamford, 201 Conn. 700, 713 (1986). The burden of establishing the existence of a valid nonconforming use as of the effective date of zoning regulation is on the property owner. Friedson v. Westport, 181 Conn. 230, 234 (1980).
The following evidence regarding the use of the subject structure is contained in the record. CT Page 5113
 1. Letter from adjacent landowner Louise Dunn stating that she was familiar with the property since 1944, and that the subject structure was constructed around 1950, used as a workshop, renovated and rented in July, 1979 and continues as a rental dwelling. (RR #23 at 3, and RR #3).
 2. Letter from and testimony of Robert Jones, adjacent landowner, stating that he was familiar with the property since 1968, that it was in disuse in 1968, renovated in 1979, and was a rented dwelling thereafter. (RR #23 at 17-19, and RR #4).
 3. Letter of Gerald A. Skehan, predecessor in title, contents noted above #15).
 4. Application for Building Permit, dated 4/16/68 to construct a residence. Application reads, in pertinent part "Occupancy of other building on the lot — Storage Shed and Garage," signed by owner Gerald Skehan.
 5. Assessor's field card, dated 9-8-79, listing the subject property as "Shop," dated from "1956 +," (RR #18).
 5a Assessor's field card dated 6-15-81, listing the subject structure as "Studio." (RR #14 Plaintiff's Exhibit C, and RR# Opposition #4).
 6. Testimony of Leonard DiPrete, City of Stamford Zoning Enforcement Officer, stating that:
 a) a search of the residential record for the 1950's shows no structure on the property (RR #23, RR at 12, RR #16);
 b) a one family residence was constructed and assessment was completed in 1969. (RR #23 at 13, RR #17).
c) a "shop" was listed on the residential CT Page 5114 record of the 1970's; (RR #23 at 13, RR #18);
 d) The present residential record shows a one family dwelling a studio and attached shed. (RR #23 at 13);
 e) ". . . if the applicant [Skehan] came in and stated that he had a cottage or other dwelling unit on that lot at that time, he could not and would not have received a permit to construct a one family dwelling." (RR #23 at 14).
 f) testimony of Attorney Shiffman, in answer to the Chairman's question "Can you establish that it's been used all this time as a residence." Mr. Shiffman: "I can't — Mr. Horowitz only purchased the property in 1985. We cannot. I have no evidence of that." (RR #23 at 24).
 g) testimony of Robert Horowitz, owner, that a tenant was living on the property as far back as 1970, (RR #23 at 25), and that he has been "paying taxes on it." (RR #23 at 29).
It is found that there is conflicting evidence on the record as to when the structure was constructed and to what uses it was put. Assuming arguendo that even if the structure were built prior to the adoption of zoning regulations in November, 1951, the plaintiff has not submitted any evidence to show that the structure was used as a dwelling unit prior to November, 1951. To be considered a nonconforming use, the use must be in existence at the time the zoning regulations making the use nonconforming were enacted. Cummings v. Tripp, 204 Conn. at 91-92.
It is further found that the record sufficiently establishes use of the structure as a dwelling unit either in 1970 or 1979, in either case well after the establishment of the City of Stamford Zoning Regulations.
In sustaining the Zoning Enforcement Officer's decision, the board found that "the accessory structure was not used as a dwelling unit prior to November 30, 1951." (RR #25 Decision of the Zoning Board of Appeals dated March 21, 1990). Even if the Board had found that the structure were occupied as a dwelling unit in 1950-1951, and then in 1951 CT Page 5115 the zoning regulations were adopted allowing one dwelling per lot, the single-family residence for which Mr. Skehan applied for a building permit in 1968 would have been prohibited in an RA2 zone, (RR #23 at 14), because the one allowed dwelling would have been already in place.
It is, therefore, found that there is sufficient evidence in the record that the subject structure has never been a legal nonconforming use, (See definition of Accessory Building or Use fn. 1)[1], thereby supporting the Board's sustaining the decision of the Zoning Enforcement officer on grounds that the structure was not used as a dwelling unit prior to November 30, 1951.[2]
II Presence of the Zoning Enforcement Officer
The record shows that the ZEO attended the Zoning Board of Appeals meeting of March 21, 1990, at which the Board rendered its decision on Horowitz's appeal. (RR #24, Transcript Cover Page). Plaintiff argues that, even though the ZEO took no part in the decision, and did not speak at the meeting, his mere presence had a "deleterious effect on providing a fair hearing and outcome" and rendered the Board's decision illegal.
Both parties cite to Kyser v. Zoning Board of Appeals,155 Conn. 236 (1967). In Kyser, two officials were called in to the Board's executive session to explain technical aspects of the case. While the Kyser court commented that "[t]he board could easily have afforded the plaintiffs an opportunity to be present at the questioning of the two officials. . . ." Id. at 52, the court also stated that "neither spoke in favor of or against the plaintiff's appeal or attempted to influence the board in its decision." Id. at 251, and that since the plaintiffs in Kyser were not prejudiced thereby, the Board did not act arbitrarily, illegally or in abuse of its discretion. Kyser at 251. It is found that the Board did not act illegally by permitting the ZEO to be present in its executive session.
III Laches
The plaintiff argues that the circumstances of this case require that the City of Stamford be estopped by laches from enforcing its zoning laws. Specifically, circumstances to which he refers are: 1) the structure exists on the tax assessor's records and that he paid the assessed taxes, while "another branch [ZEO] is saying you can't have [it]." (RR #23 at 32); 2) the City's incomplete records have prevented him from "definitely establishing the correct CT Page 5116 date of the cottage's construction as being prior to November, 1951." (Plaintiff's Memorandum of Law at 15.)
"A zoning commission `is not estopped by laches from enforcing its zoning laws.'" West Hartford v. Rechel,190 Conn. 114, 120 (1983), quoting Bianco v. Darien,157 Conn. 548, 556 (1969). In addition, it is the opinion of the court that definitely establishing the correct construction date is irrelevant because the issue here is use. (See discussion re: use above). It is also the court's opinion that the action of the defendant Board was not barred by laches. The plaintiff's appeal is dismissed.
JOHN J.P. RYAN, Judge.